1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8
9   MICHAEL ROBERT PERSON,                 )
                                           )
10                   Petitioner,           )        3:10-cv-00480-LRH-WGC
                                           )
11   vs.                                   )        **ORDER**
                                           )
12   DWIGHT NEVEN, *et al.*,               )
                                           )
13                   Respondents.          )
     _____/

14

15          This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a

16   Nevada state prisoner who is represented by counsel.  This matter comes before the Court on the

17   merits of the amended petition.

18   **I.  Procedural History**

19          On November 17, 2003, the State charged petitioner and three co-defendants (Nathaniel

20   McKinney, Jerome Henderson, and Torrance Alonzo Mills) of the following: Count I, conspiracy to

21   commit robbery, and Counts II-V, robbery with the use of a firearm.  (Exhibit 3).[1]  The victims of the

22   armed robbery were Matthew Matherly, Donald Foster, Angel Favela, and Beth Roberts.  (*Id.*).

23   Following the preliminary hearing, during which petitioner was represented by the public defender,

24   the court bound over petitioner, Henderson, and Mills.[2]  (Exhibits 4 and 5).

25

26          [1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 12-16 and

27   ECF No. 47-1 & 47-2.

28          [2]  Co-defendant McKinney was not yet in custody at the time of the preliminary hearing.  He was
     later tried and convicted on all counts in a separate case.  (*See* Exhibit 59, at p. 2; Exhibit 78).

The State charged petitioner, Henderson, and Mills in the Second Judicial District Court with Count I, conspiracy to commit robbery, and Counts II-V, robbery with the use of a firearm. (Exhibit 7). Petitioner pled not guilty. (Exhibit 8). Petitioner was represented by Dennis Cameron. (*Id.*, at p. 3).

On February 26, 2004, petitioner changed his plea, pursuant to a guilty plea memorandum, pleading guilty to two counts of robbery with the use of a firearm involving victims Favela and Roberts. (Exhibit 13, at p. 4; Exhibit 14).

On April 22, 2004, the court held the sentencing hearing, but continued the matter so that counsel could obtain a psychological evaluation of petitioner. (Exhibit 19). At the continued sentencing hearing, held June 29, 2004, the court sentenced petitioner to 40-180 months on each of the two counts, with a like consecutive term for the use of a deadly weapon as to both counts, with the counts to run consecutively. (Exhibit 21, at p. 5). The judgment of conviction was filed June 29, 2004. (Exhibit 22).

Petitioner appealed the judgment of conviction. (Exhibits 24 & 26). On December 2, 2004, the Nevada Supreme Court affirmed the conviction. (Exhibit 31). Remittitur issued on December 28, 2004. (Exhibit 32).

On November 1, 2005, petitioner filed a post-conviction habeas petition in state district court. (Exhibit 38). Petitioner filed a supplement to the petition on November 9, 2006. (Exhibit 41). On July 18, 2007, the state district court dismissed several grounds of the petition, and found that petitioner had abandoned another ground. (Exhibit 48). The court ordered an evidentiary hearing on several claims: alleged attorney conflict of interest; amount of restitution; clerical mistake in the judgment of conviction; and failure of counsel to hire an expert. (*Id.*). The evidentiary hearing was held on March 25, 2008. (Exhibit 52). The state district court denied the habeas petition, except as to the amount of restitution. (*Id.*).

On April 15, 2008, petitioner filed a motion to modify sentence. (Exhibit 53). On April 7, 2009, the state district court issued a written order denying the motion to modify sentence, and denying the post-conviction habeas petitions, except as to the amount of restitution. (Exhibit 59). ///

2

On April 15, 2009, the court filed an amended judgment, changing the amount of restitution. (Exhibit 61).

Petitioner appealed from the denial of his state habeas petition and motion to modify sentence. (Exhibit 62). On April 8, 2010, the Nevada Supreme Court entered an order of affirmance. (Exhibit 74). The Court denied petitioner's petition for rehearing on June 9, 2010. (Exhibit 76). Remittitur issued on July 8, 2010. (Exhibit 77).

On August 3, 2010, petitioner filed a federal habeas petition in this Court. (ECF No. 2). The petition contained three grounds. (ECF No. 2). By order filed November 2, 2010, this Court granted petitioner's motion to appoint counsel and directed respondents to respond to the petition. (ECF No. 7). Respondents filed a motion to dismiss on February 15, 2011. (ECF No. 11). On July 21, 2011, this Court granted in part, and denied in part, respondents' motion to dismiss. (ECF No. 24). Petitioner filed a notice of election to abandon only portions of Grounds One and Two, and sought to file an amended petition raising only exhausted claims. (ECF No. 30). By order filed March 14, 2012, this Court granted petitioner's request to file an amended habeas petition that contains only exhausted claims. (ECF No. 34). Petitioner filed an amended petition on March 29, 2012. (ECF No. 36). On June 18, 2012, respondents filed an answer to the amended petition. (ECF No. 42). Petitioner filed a traverse on June 26, 2012. (ECF No. 48). The Court now addresses the merits of the amended petition.

## II. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set

in § 2254(d) on the record that was before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

**III. Discussion**

    **A. Ground I**

In Ground I of the amended petition, petitioner claims:

> I allege that my state court conviction is unconstitutional, in violation of my Fifth, Sixth, and Fourteenth Amendment rights to due process of law, and to conflict-free assistance of counsel.

(Amended Petition, ECF No. 36, at p. 4). Petitioner alleges that his defense counsel, Dennis Cameron, acted under an actual conflict of interest because he had previously represented victim Matherly and Matherly's brother in several criminal cases. Petitioner alleges that his defense counsel failed to secure a valid waiver of the conflict. Petitioner argues that the Nevada Supreme Court's decision was unreasonable in light of *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980).[3] (Amended Petition, at pp. 4-5, 8-20).

    Where the constitutional right to counsel exists, there is a correlative right to representation that is free from conflicts of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Until a defendant shows that counsel was actively representing conflicting interests, the defendant has not established the constitutional predicate for a claim of ineffective assistance of counsel. *Id.* at 350. Absent objection, a defendant must demonstrate that a conflict of interest actually adversely affected the adequacy of counsel's representation. *Mickens v. Taylor*, 535 U.S. 162, 168 (2002).

    The mere possibility of a conflict of interest is insufficient to establish a constitutional violation. *Cuyler v. Sullivan*, 446 U.S. at 350. The petitioner must make a factual showing on the record that an actual conflict existed. *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1992). Potentially divided allegiances do not constitute active representation of conflicting interests.

///

---

    [3] This Court previously found that petitioner's allegations that trial counsel failed to investigate petitioner's exculpatory story, failed to file motions, failed to pursue defenses, and persuaded him to plead guilty, were unexhausted factual allegations. (ECF No. 24, at p. 5). To the extent that petitioner's amended petition re-alleges these facts, the Court's finding that these allegations are unexhausted still stands.

1    *Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997).  Speculation will not substitute for evidence.

2    *Morris v. California*, 966 F.2d at 456.

3           In cases involving successive representation, "conflicts of interest may arise if the cases are

4    substantially related or if the attorney reveals privileged communications of the former client or

5    otherwise divides his loyalties."  *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988).  The potential

6    danger in a successive representation situation is that the attorney obtaining privileged information

7    from a former client who may then fail to conduct a rigorous cross-examination for fear of misusing

8    that confidential information.  *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989).

9    However, whether the rule in *Cuyler* and its progeny can be extended to cases of successive

10   representation, as far as United States Supreme Court jurisprudence is concerned, remains an open

11   question.  *Mickens*, 535 U.S. at 176.

12          A defendant may knowledgeably waive a conflict of interest.  *United States v. Martinez*, 143

13   F.3d 1266, 1268-69 (9th Cir. 1998); *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994).  While the

14   Model Rules of Professional Conduct, as reflected in NRPC 1.7, provide that waivers should be in

15   writing, the breach of an ethical standard does not establish a violation of the Sixth Amendment right

16   to counsel.  *See Mickens v. Taylor*, 535 U.S. at 176 (citing *Nix v. Whiteside*, 475 U.S. 157, 165

17   (1986)).

18          In the instant case, the armed robbery involved four victims – Matherly, Foster, Favela, and

19   Roberts.  (Exhibit 7).  During the evidentiary hearing on petitioner's state post-conviction petition,

20   attorney Dennis Cameron testified that petitioner's mother retained him to represent petitioner

21   through trial and appeal.  After a retainer agreement was signed, Cameron discovered that he had a

22   potential conflict – that Matthew Matherly was one of the victims and that he had previously

23   represented Matherly in several criminal cases.  (Exhibit 52, at pp. 26-27, 33, 35, 50, 56, 58).  Once

24   Cameron discovered the potential conflict, he notified petitioner that he could no longer represent

25   him and that he would withdraw from the case.  (*Id.*, at pp. 33-34, 58).  Cameron explained to

26   petitioner that, because of his prior representation of Matherly, he possessed information that would

27   make it impossible for him to effectively cross-examine Matherly at trial.  (*Id.*, at p. 33).  Cameron

28   informed petitioner that he needed a new lawyer.  (*Id.*, at p. 36).

1    Cameron testified that he received numerous requests from petitioner, petitioner's mother,

2    and petitioner's girlfriend to continue his representation. (*Id.*, at pp. 34-35, 56, 58). After several

3    discussions, Cameron informed petitioner that if both petitioner and Matherly were willing to waive

4    the conflict, Cameron could represent petitioner through negotiations and sentencing only. (*Id.*, at

5    pp. 34-35, 37, 58). Cameron testified that petitioner verbally waived the potential conflict, and

6    Matherly also verbally waived the conflict as to Cameron representing petitioner in the guilty plea

7    and sentencing. (*Id.*, at pp. 34-35, 38, 62, 65, 66). Cameron did not obtain a written waiver of the

8    potential conflict from either petitioner or Matherly. (*Id.*, at p. 36).

9    After petitioner and Matherly waived the potential conflict, Cameron then obtained a plea

10   agreement with the State. (*Id.*, at pp. 46, 58-60, 66). Because of the potential conflict, which

11   Cameron explained to the prosecutor, they agreed that petitioner would plead guilty to the two counts

12   involving Favela and Roberts, but not Matherly. (*Id.*, at p. 60). Cameron testified that he

13   extensively discussed the potential sentences with petitioner. (*Id.*, at pp. 45, 59).

14   When asked what Cameron would have done if there was no conflict, Cameron testified: "I

15   would have done whatever Mr. Person wanted to do in regard to take it to trial or not taking it to

16   trial. However, my advice to Mr. Person would have been to do exactly what we did, because that

17   was the best outcome for him. I believed it at the time, and I still believe it." (Exhibit 52, at pp. 59-

18   60). Cameron testified that he told petitioner that if he refused the plea offer, Cameron could not go

19   forward to trial, that petitioner had every right to a trial, and that he could retain another attorney or

20   go back to appointed counsel. (*Id.*, at pp. 60-61).

21   Petitioner testified at the evidentiary hearing that he understood the potential penalties for

22   robbery with the use of a firearm, and he understood that the court had full discretion as to

23   sentencing, but that Cameron hoped to get a 4-10 year sentence. (*Id.*, at p. 77). Petitioner testified

24   that he could not recall and did not remember Cameron telling him of the potential conflict with

25   Matherly or verbally waiving the potential conflict. (*Id.*, at pp. 77-78, 80).

26   During the change of plea hearing, petitioner admitted committing the two armed robberies

27   against Favela and Roberts. (Exhibit 13, at pp. 10-11). At the time of initial sentencing, Cameron

28   informed the court that petitioner initially told him that he was not present during the robbery, at

1  which point he told petitioner's mother that he could not represent petitioner and severed his

2  relationship.  (Exhibit 19, at p. 8).  Cameron stated that petitioner later contacted him and told him

3  that he had committed the crime, at which point Cameron agreed to continue his representation.

4  (*Id.*).

5        The court ordered the sentencing continued so that Cameron could obtain a psychological

6  evaluation of petitioner.  (Exhibit 19, at p. 18).  The court was not concerned that petitioner was

7  competent to understand the nature of the proceedings, but that at his first meeting with Cameron,

8  petitioner appeared delusional and he was previously diagnosed with ADHD or ADD.  (*Id.*, at p. 20).

9  The court wished to make a clear record and to assist in the prison's classification of petitioner.

10  (*Id.*).

11        At the continued sentencing hearing, Cameron presented the findings of Dr. Robert Hiller,

12  who found petitioner to be a nineteen-year-old, second generation drug user who knew he had

13  committed serious felonies.  (Exhibit 21, at p. 1).  In allocution, petitioner took responsibility for the

14  armed robberies and stated that he deserved the consequences of his actions.  (*Id.*, at p. 3).

15  Regarding his sentencing strategy, Cameron testified at the evidentiary hearing that he sought to

16  focus on petitioner's young age, that he made a mistake and was taking responsibility, and that he

17  was easily swayed and was not the leader of the group of that committed the armed robberies.

18  (Exhibit 52, at pp. 51, 64, 69).

19        Based on the state court record, petitioner's case had nothing to do with Matherly's prior

20  cases.  Cameron did not reveal any attorney-client privileged information to petitioner regarding his

21  prior representations of Matherly.  There was no point at which Cameron failed to rigorously cross-

22  examine Matherly, or risked using prior information against Matherly.  That potential did not exist

23  because Cameron did not take petitioner's case to trial.  Petitioner was free to proceed to trial with

24  other counsel.  However, petitioner chose to continue with Cameron representing him, with the full

25  understanding that Cameron could only represent him if he pled guilty because Cameron could not

26  effectively cross-examine Matherly, due to his prior representation.  Petitioner pled guilty to the

27  robberies of Favela and Roberts only, and at no time was there a need for Cameron to alter his

28  representation of petitioner in favor of Matherly.

1      In addressing the issue of the alleged conflict of interest at the evidentiary hearing, the state

2 district court found credible Cameron's testimony that he revealed the potential conflict with

3 Matherly to petitioner, and that he attempted to do everything possible on behalf of petitioner.

4 (Exhibit 52, at pp. 110, 116-118).  The court found that petitioner's arguments were belied by the

5 record, the presentence investigation report, and the court's own knowledge of the case.  (*Id.*).  The

6 court found that Cameron's representation of petitioner was not adversely affected by the potential

7 conflict with having previously represented Matherly.  (*Id.*, at pp. 117-18).

8      In the written order denying the habeas petition, the state district court found that Cameron

9 did not actively represent conflicting interests, and that the conflict was best categorized as a

10 potential conflict rather than an actual conflict.  (Exhibit 59, at p. 4).  The court found that petitioner

11 failed to show that a conflict of interest rendered his plea involuntary or unintelligent, or affected

12 counsel's advice to plead guilty, because Cameron testified credibly that he would have given

13 petitioner the same advice even if he had not previously represented Matherly.  (*Id.*, at pp. 4-5).  The

14 court found credible Cameron's testimony that he disclosed any conflict to petitioner, that petitioner

15 knowingly and voluntarily waived any conflict, that Matherly relieved Cameron of the attorney-client

16 privilege, and that Cameron strongly advised petitioner to find another lawyer.  (*Id.*, at p. 5).  The

17 court further found that, had the conflict come to its attention in pretrial proceedings, a knowing and

18 voluntary waiver of the right to conflict-free counsel would have led the court to allow Cameron to

19 continue representing petitioner for the limited purpose of plea negotiations or sentencing.  (*Id.*).

20      When petitioner appealed the denial of his state habeas petition, the Nevada Supreme Court

21 ruled as follows:

22         Second, appellant claims that trial counsel was ineffective pursuant to
Cuyler v. Sullivan, 446 U.S. 335 (1980), because trial counsel's

23         conflict of interest prevented appellant from going to trial despite
having a viable defense.  Appellant fails to demonstrate that "an actual

24         conflict of interest adversely affected his lawyer's performance."  Id. at
350.  The district court found trial counsel to be credible when he

25         testified that, even if one of the victims had not been a former client,
he would have given appellant the same advice to plead guilty.  The

26         district court's finding is supported by substantial evidence as the
record reflects that appellant admitted to participating in the robbery

27         and at least one of his co-defendants was prepared to testify against
him.  We therefore conclude that the district court did not err in

28         denying this claim.

(Exhibit 74, at pp. 2-3).  Petitioner has not established a Sixth Amendment violation because petitioner has not shown that counsel actively represented conflicting interests.  Petitioner has not established that an actual conflict of interest affected counsel's performance.  *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980); *Mickens v. Taylor*, 535 U.S. 162, 167-176 (2002).  Moreover, to the extent that there existed a potential conflict, the state court record reflects that petitioner waived the conflict.  The fact that the waiver was not reduced to writing, as set forth in the Model Rules of Professional Conduct, and as reflected in NRPC 1.7, does not establish a constitutional violation. *See Mickens v. Taylor*, 535 U.S. at 176 (citing *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (breach of an ethical standard does not establish a violation of the Sixth Amendment right to counsel)). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Federal habeas relief is denied as to Ground I of the amended petition.

## B.  Ground II

In Ground II of the amended petition, petitioner claims:

> I allege that my state court conviction is unconstitutional.  The Nevada courts violated my Fifth, Sixth and Fourteenth Amendment rights to due process of law and to effective assistance of counsel in summarily dismissing my claim that trial counsel was prejudicially ineffective per Kimmelman v. Morrison, 477 U.S. 365, 382 (1986) in failing to bring on pre-trial proceedings to challenge the methodology of the alleged victims' identification of Petitioner as the second armed robber.  Based on the totality of circumstances, had counsel filed such a motion and/or had the state trial court granted Petitioner an evidentiary hearing on this point, the alleged victim(s) inevitably would not have been able to identify Petitioner.

(Amended Petition, ECF No. 36, at pp. 5-6).  Petitioner alleges that the Nevada Supreme Court's conclusions were contrary to *Strickland v. Washington*, 466 U.S. 668 (1984) and *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  (Amended Petition, at pp. 5-6, 20-26).

### 1.  Ineffective Assistance of Counsel Standard

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

petitioner claiming ineffective assistance of counsel has the burden of demonstrating that counsel's performance was unreasonably deficient and that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster,* 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance,* 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)). In *Cullen v. Pinholster,* the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster,* 131 S.Ct. at 1398-1401. The United States Supreme Court has specifically

reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective

assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at 1420.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).  "A court considering a claim of

ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was

within the 'wide range' of reasonable professional assistance."  *Id.* at 787 (quoting *Strickland*, 466

U.S. at 689).  "The question is whether an attorney's representation amounted to incompetence under

prevailing professional norms, not whether it deviated from best practices or most common custom."

*Id.* (internal quotations and citations omitted).

### 2.  Claim that Counsel was Ineffective for Not Challenging the Methodology of the Victims' Identification of Petitioner

In alleging that counsel failed to file a pretrial motion to suppress evidence, the petitioner

must establish a reasonable probability that the evidence would have been suppressed and the

outcome of the trial would have been different had the evidence been suppressed.  *Kimmelman v.

Morrison*, 477 U.S. 365, 375, 385 (1986) (counsel failed to file a timely suppression motion, not due

to strategic consideration, but because he failed to conduct any discovery on the search and seizure

issue).  Where the record is silent as to why counsel did not file a motion to suppress, the court

presumes counsel acted properly.  *See Grayson v. Thompson*, 257 F.3d 1194, 1268 (11th Cir. 2001).

A preliminary hearing was conducted for co-defendants Person, Henderson, and Mills.

(Exhibit 4).  During the hearing, Matherly testified that as he was going into his apartment the night

of the robbery, he saw his companions – Foster, Favela, and Roberts – on the ground in front of his

apartment door with two armed men.  (Exhibit 4, at p. 27).  He opened the door to his apartment as

told by the two gunmen and all four victims were told to immediately lie face down in the apartment. (*Id.*, at pp. 10, 28, 37-38). He testified that at one point, one of the gunman left and returned with two other people. (*Id.*, at pp. 11, 41-42). During the preliminary hearing, Matherly testified that one of the armed robbers was dark and the other lighter-skinned, but that he could not identify any of the robbers. (*Id.*, at pp. 10-11, 19). He testified that one gunman wore something like a headband around his nose and mouth. (*Id.*, at p. 30). Victim Foster also testified that he could not identify any of the robbers. (*Id.*, at pp. 47, 50). Both Matherly and Foster testified that they did not know petitioner. (*Id.*, at pp. 39-40 (Matherly); p. 62 (Foster)).

Victim Favela testified that one of the armed robbers was big and darker while the other was lighter skinned. (Exhibit 4, at p. 66). On cross-examination Favela identified co-defendant Henderson as one of the individuals who came into the apartment later. (*Id.*, at pp. 68-69). She testified that one of the armed robbers wore a mask, and she did not see him in the courtroom; but she then identified petitioner as the second gunman. (*Id.*, at pp. 74-75, 76). Favela testified that she got a view of the two armed robbers because they were facing her when she first came into the apartment area. (*Id.*, at p. 73). As she was walking up the stairs to Matherly's apartment, she turned around to see Foster and Roberts on her right and the two armed robbers in front of her. (*Id.*). She never participated in a photo lineup. (*Id.*, at p. 76).

Petitioner alleges that the prosecution was based on suspect eyewitness identification testimony, and that counsel was ineffective for failing to file pretrial motions to suppress the suspect identification methodology used. (ECF No. 36, Amended Petition, at p. 20). Petitioner alleges that the identifications came from strangers to petitioner, and that each victim was face down at the time of the robbery. Petitioner alleges that in each case, the witness gave a physical description of the robber which was inconsistent with each other and with his appearance, and that it made no sense to have Roberts participate in a photo lineup and not Favela. (*Id.*, at p. 21).

Petitioner further alleges that, at co-defendant McKinney's trial two years later, Favela identified McKinney as the first gunman, whom she described as a black male, but testified that the second gunman looked Mexican with light skin, a mustache and wore a bandana. She further testified that the lighter-skinned gunman wore a beanie. (*Id.*). Petitioner alleges that at McKinney's

13

1  evidentiary hearing held after petitioner's evidentiary hearing, Favela testified that she could not

2  identify McKinney as one of the assailants, and the state court granted McKinney's state habeas

3  petition.  (*Id.*, at p. 22).

4         An identification may be suppressed as unreliable if "the procedure for identification was so

5  'unnecessarily suggestive and conducive to irreparable misidentification' as to amount to a denial of

6  due process of law."  *Stovall v. Denno*, 388 U.S. 293, 302 (1967) (citation omitted), *overruled on*

7  *other grounds, Griffith v. Kentucky*, 479 U.S. 314 (1987).  To determine the reliability of in-court

8  identifications, the court must evaluate: (1) the opportunity of the witness to view the criminal at the

9  time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior

10  description of the criminal; (4) the level of certainty demonstrated by the witness at the

11  confrontation; and (5) the length of time between the crime and the confrontation.  *Neil v. Biggers*,

12  409 U.S. 188, 199-200 (1972).

13         In the instant case, all of the *Biggers* factors indicate that victims Favela and Roberts'

14  identification of petitioner was reliable.  First, both witnesses had an opportunity to view the

15  assailants at the time of the crime:  Favela testified that she came face-to-face with the two gunmen

16  prior to entering Matherly's apartment.  Roberts testified that she held a conversation with the

17  gunman prior to lying down inside the apartment.  Second, as to the witnesses' degree of attention:

18  Favela immediately saw the gunmen at the top of the stairs, while Roberts carried on a conversation

19  with one gunman and witnessed both.  Third, as to the accuracy of the witnesses' prior description of

20  the assailant:  Favela testified that she did not receive a photo lineup but identified petitioner as the

21  lighter skinned gunman.  Roberts positively identified petitioner and testified that she was previously

22  shown a photo lineup.  Petitioner fails to allege specific instances where Favela and Roberts' prior

23  descriptions were not accurate.  He alleges only a conclusory statement that their physical

24  descriptions of the perpetrators were inconsistent with each other and with his appearance.  (ECF No.

25  36, Amended Petition, at p. 21).  Mere conclusions of a violation of federal rights without specifics

26  fails to state a basis for federal habeas relief.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

27  Moreover, this was not a situation in which petitioner was the only defendant at the defense table

28  during the preliminary hearing.  There were three defendants – petitioner, Henderson, and Mills.

14

Both women positively identified both Henderson and petitioner, but neither identified Mills. Fourth, as to the level of certainty demonstrated by the witness at the confrontation: Favela testified that she believed petitioner was one of the gunmen. Roberts testified that she got a good look at both gunmen. Fifth, as to the length of time between the crime and the confrontation: The robbery occurred on November 8, 2003. (Exhibits 2, 4, 7). The preliminary hearing was held just over a month later on December 16, 2003. (Exhibit 4). There was a short period of time between the date of the crime and the in-court identification of petitioner by both Favela and Roberts. Given that all five *Biggers* factors support the reliability of the victims' identification, it would not be unreasonable for defense counsel to conclude that a subsequent, pretrial motion to suppress would have been futile. Counsel is not required to file a suppression motion that would have been meritless on the facts and the law. *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996). Mere weakness or doubts about the validity of an identification are not sufficient to warrant suppression: "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Petitioner cannot demonstrate prejudice resulting from counsel's failure to move to suppress the identifications.

The Nevada Supreme Court addressed this issue as follows:

> Appellant also alleges that the victims' descriptions of the gunmen are inconsistent with one another, with the appellant's appearance, and with their own testimony at a co-defendant's trial held 11 months after appellant was sentenced. A review of the record does not reveal any material inconsistencies in the descriptions, and trial counsel's performance is to be assessed at the time of that performance. See Strickland, 466 U.S. at 689. Appellant therefore also fails to demonstrate ineffective assistance on this point.

(Exhibit 74, at p. 3, n.2). Trial counsel cannot be held responsible for alleged inconsistencies in a victim's testimony which occurred at McKinney's trial, held nearly a year after the performance in question. Rather, trial counsel's performance is to be assessed at the time of the alleged error. *Strickland*, 466 U.S. at 68. The same reasoning is true regarding the subsequent McKinney evidentiary hearing. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an

1    unreasonable determination of the facts in light of the evidence presented in the state court

2    proceeding.  Federal habeas relief is denied as to Ground II of the petition.

3                    **3.  Petitioner's Request for an Evidentiary Hearing**

4           Under 28 U.S.C. § 2254(e)(2), Congress specified the circumstances under which a federal

5    district court may hold an evidentiary hearing when a habeas petitioner failed to develop the factual

6    basis of the claim in State court proceedings.  Section 2254(e)(2) provides as follows:

7                   If the applicant has failed to develop the factual basis of a claim in
                    state court proceedings, the court shall not hold an evidentiary hearing
8                   on the claim unless [petitioner] shows that–

9                   (A) the claim relies on–

10                          (I) a new rule of constitutional law, made retroactive to cases
                    on collateral review by the Supreme Court, that was previously
11                  unavailable; or

12                          (ii) a factual predicate that could not have been previously
                    discovered through the exercise of due diligence; and
13
                    (B) the facts underlying the claim would be sufficient to establish by
14                  clear and convincing evidence that but for constitutional error, no
                    reasonable factfinder would have found [petitioner] guilty of the
15                  underlying offense.

16          A petitioner must demonstrate that the facts underlying the claim are sufficient to show that,

17   but for the constitutional error, no reasonable factfinder would have found the petitioner guilty.

18   *Davis v. Woodford*, 333 F.3d 982, 994-95 (9th Cir. 2003).  Section 2254(e) only specifies when

19   evidentiary hearings are allowed, not when they are required.  *Downs v. Hoyt*, 232 F.3d 1031, 1041

20   (9th Cir. 2000).

21          There is no need for an evidentiary hearing "even if credibility is an issue" when the evidence

22   already in the record "fully presents the relevant facts" and live testimony "would not alter the

23   court's view of the record."  *Williams v. Woodford*, 306 F.3d 665, 668-69 (9th Cir. 2002).  No hearing

24   is required on issues that can be resolved on the record.  *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th

25   Cir. 1998).  If the record conclusively shows no entitlement to relief, the matter is over.  *Anderson v.*

26   *United States*, 898 F.2d 751 (9th Cir. 1990).

27   ///

28   ///

                                                    16

The United States Supreme Court recently held that habeas "review under 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

In the instant case, the state district court denied petitioner an evidentiary hearing on this issue because it found that he failed to support his argument with facts concerning the alleged unconstitutionality of the identification procedure. (Exhibit 48, at pp. 2-3). The state district court further found that petitioner's allegations regarding the varying descriptions of the two women focused on the weight and credibility of the evidence, not the constitutionality of the identification procedure. (*Id.*). On appeal, the Nevada Supreme Court found that the state district court did not err in denying the claim without a hearing because petitioner failed to set forth any specific facts in support of his claim. (Exhibit 74, at pp. 3-4).

Petitioner argues that he should receive an evidentiary hearing based on the findings from co-defendant McKinney's evidentiary hearing, which occurred after petitioner's evidentiary hearing. (ECF No. 36, Amended Petition, at p. 22). Petitioner alleges that the same trial court granted McKinney's petition in part, because victim Favela testified that she could not identify co-defendant McKinney as one of the assailants. (*Id.*, at p. 22).[4]

Ordinarily, a federal habeas proceeding is decided on the complete state court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing. *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963), *overruled on other grounds by Keeny v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superseded in part by statute*, 28 U.S.C. § 2254(e)(2). The Supreme Court made clear in *Cullen v. Pinholster* that "review [under 28 U.S.C. § 2254(d)(1)] is limited to the record that was before the state court that adjudicated the claim on the merits." 131 S.Ct. at 1398-99. Although under *Cullen v. Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, the Court made clear that the discretion to grant a request for an evidentiary hearing is limited by § 2254(e)(2). *Id.* at 1400-01.

---

[4] The Court notes that the state district court granted McKinney's petition because counsel failed to develop an alibi defense, not because of Favela's testimony. (Exhibit 78, at ECF No. 47).

Petitioner fails to demonstrate that *Cullen v. Pinholster* is not applicable in this matter, or that his request for an evidentiary hearing meets the necessary standard. The appropriate place to develop the facts necessary to support a petition for federal habeas relief is in the state court. It does not appear from the record that the state courts precluded petitioner from developing the factual basis for his claim. *Cullen v. Pinholster*, 131 S.Ct. 1417 n.5 (Sotomayor, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself). Rather, petitioner failed to present the state district court with specific factual allegations warranting an evidentiary hearing. That his co-defendant successfully raised a claim and called victim Favela, who testified only that she could not identify co-defendant McKinney as the second armed robber, does not satisfy the requirements of 28 U.S.C. § 2254(e)(2)(A)(ii). Moreover, victims Matherly, Favela, and Roberts all testified at the preliminary hearing that the dark-skinned armed robber, McKinney, wore a mask; Roberts testified that petitioner did not wear a mask and Favela did not state that petitioner wore a mask. Petitioner has not identified any factual conflict, other than mere supposition based on one victim's subsequent testimony regarding the identification of a co-defendant, that would require this Court to hold an evidentiary hearing to resolve.

Moreover, only victim Favela testified at McKinney's state habeas petition evidentiary hearing. She testified only that she could not identify McKinney as the masked armed robber. Petitioner fails to demonstrate that either Favela or Roberts would testify that they could not identify petitioner as one of the armed robbers. Mere conclusory allegations unsupported by specifics are insufficient to warrant an evidentiary hearing in federal habeas corpus proceedings. *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). Unlike co-defendant McKinney, who proceeded to trial on the charges, petitioner pled guilty in this case and admitted that he committed the crimes. (Exhibit 13, at pp. 10-11). Petitioner fails to demonstrate that he is entitled to an evidentiary hearing because the record before the state district court was clear, and petitioner fails to demonstrate that additional information is necessary or would be produced at such a hearing. Petitioner's request for an evidentiary hearing in this Court is denied. Federal habeas relief is denied as to Ground II of the amended petition.

**C.  Ground III**

In Ground III of the amended petition, petitioner claims:

> I allege that my state court sentence was unconstitutional, in violation of my Fifth, Sixth and Fourteenth Amendment rights to due process, to a fair sentencing hearing, and to effective assistance of counsel at sentencing . . .

(Amended Petition, ECF No. 36, at pp. 6-7).  In Ground III, Part I, petitioner alleges that trial counsel failed and refused to present mitigating evidence at sentencing from a forensic psychologist, who could have testified that petitioner is a follower, not inherently a psychopath, and that as long as he stayed away from alcohol and drugs, and from other domineering psychopaths, the probability of him committing armed robberies in the future was extremely low.  (*Id.*, at pp. 6-7, 26-35).  Petitioner alleges that trial counsel admitted that such opinions would have been helpful, but that it was not part of his sentencing strategy. (*Id.*, at p. 7).  He alleges the sentencing judge ordered trial counsel to make the findings part of his sentencing strategy, but instead trial counsel presented undisputed psychological evidence that petitioner was competent.  (*Id.*).  In Ground III, Part II, petitioner alleges that the trial court was given impalpable, highly suspect information by the time of sentencing in the form of *ex parte* communications from co-defendant Henderson, and that neither petitioner nor his counsel had any knowledge of the information, yet the prosecutor appeared to rely on the information in advocating the imposition of consecutive sentences.  (*Id.*, at pp. 7, 36-38).

### 1.  Ground III, Part I:  Ineffective Assistance of Counsel Claim Regarding Failure to Present Mitigating Evidence of a Forensic Psychologist at Sentencing

Petitioner asserts that the Nevada Supreme Court's decision in denying his ineffective assistance of counsel claim was an unreasonable application of *Lockett v. Ohio*, 438 U.S. 586, 603 (1978), *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986), and *Strickland,* 466 U.S. 668 (1984).  In his traverse, petitioner argues that the Nevada Supreme Court's conclusion was contrary to *Wiggins v. Smith*, 539 U.S. 510 (2003).

In *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) the Court found that an Ohio death penalty statute did not permit the type of individualized consideration of mitigating factors required by the Eighth and Fourteenth Amendments in capital cases.  Specifically, the Court ruled that the sentencer

1   must not be precluded from considering, as a mitigating factor, "any aspect of a defendant's

2   character or record and any of the circumstances of the offense that the defendant proffers as a basis

3   for a sentence less than death." *Id.* at 604.

4       In *Skipper v. South Carolina*, 476 U.S. 1, 4-9 (1986), the Court held that in a capital case, the

5   trial court's exclusion from the sentencing hearing the testimony of jailers and a regular visitor

6   regarding petitioner's good behavior while in jail awaiting trial denied petitioner his right to place

7   before the sentencing jury all relevant evidence in mitigation of punishment.

8       In *Wiggins v. Smith*, 539 U.S. 510, 534-35 (2003), a capital case, the Court ruled that the

9   petitioner's defense was prejudiced where mitigating evidence that counsel failed to discover was

10  powerful – where the petitioner experienced severe privation and abuse while in the custody of his

11  alcoholic mother, was the victim of physical and sexual abuse while in foster care, was homeless at

12  times, and had diminished mental capacities.

13      The Court initially notes that *Lockett, Skipper*, and *Wiggins* were all cases in which petitioner

14  was sentenced to the death penalty, unlike the instant case, which is not a death penalty case.  Even

15  in the context of death penalty cases, the United States Supreme Court has rejected a *per se* rule

16  requiring the presentation of mitigating evidence in the sentencing phase of a capital trial.  *Burger v.*

17  *Kemp*, 483 U.S. 776, 794-95 (1987); *see also Campbell v. Kincheloe*, 829 F.2d 1453, 1462-64 (9th

18  Cir. 1987) (rejecting *per se* rule that counsel must present mitigating evidence at sentencing).  There

19  is no United States Supreme Court authority that requires counsel to present mitigating psychological

20  evidence at sentencing in a non-capital case.

21      Indeed, the presentation of expert psychiatric testimony is not necessarily an essential

22  ingredient of a reasonably competent defense.  *Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995),

23  *cert. denied,* 516 U.S. 1051 (1996).  Failure to present psychological expert testimony is not

24  ineffectiveness where the expert testimony was marginal.  *Clisby v. Alabama*, 26 F.3d 1054, 1056-57

25  (11th Cir. 1994).  In *Clisby*, the court noted that 91 percent of the "criminal element" are antisocial

26  personality types and the court expressed doubt that sentencers view substance abuse as mitigating.

27  *Id.* at 1057, n.2.  A diagnosis that a defendant has personality disorder does not necessarily constitute

28  mitigating circumstances.  *Gerlaugh v. Stewart*, 129 F.3d 1027, 1034 (9th Cir. 1997).  Psychological

20

testimony that a defendant is a person "who associated with 'wild companions' and who 'sought out the company of lawbreakers for the thrill of hurting others and then escaping the consequences of his actions' is not mitigating, but rather, damaging to a defendant during sentencing. *Id.* at 1035.  As such, a defendant could not have been prejudiced by his counsel's failure to develop such evidence at sentencing. *Id.*

In the instant case, at the time of initial sentencing, the state district court noted that, pursuant to the presentence investigation report, petitioner was on probation in California for a felony hit and run causing injury. (Exhibit 19, at p. 4).  Defense counsel Cameron reviewed petitioner's juvenile criminal history, including at age thirteen he and several older individuals took a vehicle without consent, and at sixteen he was in a vehicle with others in which a weapon was found, but the matter was dismissed because the weapon belonged to another. (*Id.*, at pp. 5-6)  Cameron argued the criminal history was not exemplary but was not as bad as it appeared on paper. (*Id.*, at pp. 6-7).

Cameron argued two primary facts that came out of the presentence report – petitioner's age, nineteen, and that the crimes arose out of one act involving multiple victims. (*Id.*, at p. 7).  Cameron argued for leniency based on petitioner's youth and the fact that he suffered from ADHD since childhood. (*Id.*).  Cameron informed the court that during his initial interview with petitioner, he fabricated a story that he was not present during the robbery, but later admitted his part in the crime and took responsibility for his actions. (*Id.*, at p. 8).  Cameron asked the court to consider 24-180 months for each count, with the counts to run concurrently, for a total of 4-30 years. (*Id.*, at pp. 10-12).

During allocution, petitioner stated that due to the pressure of drug use, when someone suggested robbery to obtain what he needed, he could not think of a reason not to do it. (*Id.*, at p. 13).

The State argued that the two female victims in the two counts to which petitioner pled guilty did not feel safe in their community and were traumatized. (*Id.*, at p. 16).  The State argued that the recommendation of concurrent 40-180 month sentences was not enough, and asked that the court sentence petitioner to either concurrent 72-180 months on each count, or 40-180 months on each count running consecutive. (*Id.*).

21

1    The state district court ordered the sentencing continued to have Cameron obtain a

2 psychological evaluation of petitioner regarding his ability to comprehend the nature of the crime

3 and involvement in the crime.  (*Id.*, at p. 18).  The court noted that the prison's classification of

4 individuals was affected by such information.  (*Id.*, at pp. 18-19).  The court specified that it was not

5 concerned that petitioner was competent to understand the nature of the proceedings.  (*Id.*, at p. 20).

6 The court wished to make a clear record and to assist in prison classification.  (*Id.*).

7    At the continued sentencing, Cameron argued that Dr. Hiller found petitioner to be a nineteen

8 year old, second generation drug user.  (Exhibit 21, at p. 1).  Dr. Hiller found that petitioner knew

9 that he had committed serious felonies, that he had been in custody for a significant period of time

10 and that he knew that he would be in prison for an even greater period of time.  (*Id.*).  Defense

11 counsel asked that, based on petitioner's age and the psychiatric evaluation of Dr. Hiller, the court

12 sentence him pursuant to the recommendation of 24 months plus 24 months for the weapon

13 enhancement on each count, to run concurrently, so that petitioner would be eligible for parole in

14 four years.  (*Id.*, at pp. 1-2).

15    The court announced that it had reviewed the presentence investigation report and Dr.

16 Hiller's evaluation, and would follow the recommendation of the presentence report.  (*Id.*, at pp. 4-

17 5).  The court sentenced petitioner to 40-180 months, with a like consecutive sentence for the

18 weapon enhancement on each count.  (*Id.*, at p. 5).  The court then asked the State whether it argued

19 for concurrent or consecutive sentences between the two counts.  The State argued consecutive,

20 which the court agreed with "under the totality of the circumstances."  (*Id.*).

21    During the evidentiary hearing on petitioner's state post-conviction habeas petition, petitioner

22 called Dr. Jerry Nims, a licensed psychologist, who was asked to determine petitioner's leadership

23 roles or talent, or how he might interact with a peer group.  (Exhibit 52, at pp. 13-14).  Dr. Nims

24 testified that petitioner was not a leader but was shy, withdrawn and suspicious, and more likely to

25 be on the fringe of a group.  (*Id.*, at p. 16).  He also found that petitioner could act impulsively,

26 especially if using drugs and/or alcohol.  (*Id.*, at pp. 16-17).  Petitioner was not strongly focused on

27 what others might feel, want, or need, but pursued his own needs first.  (*Id.*, at p. 23).

28 ///

Cameron testified at the evidentiary hearing that his sentencing strategy was to focus on petitioner's youth, inexperience, and that he was easily swayed and not the leader of the pack. (Exhibit 52, at pp. 51, 64, 69).  He testified that he was present in the courtroom during Dr. Nims testimony, and while he found the information favorable, it did not necessarily fit within the context of his sentencing argument.  (*Id.*, at pp. 54, 64).

At the evidentiary hearing, the state district court found that, at sentencing, it had considered petitioner's youth as well as his criminal history and escalating criminal behavior.  (Exhibit 52, at p. 113).  "Mr. Person's criminal history and his escalating criminal behavior would give any seasoned jurist pause."  (Exhibit 52, at p. 113).  The court found that, at sentencing, it was "cognizant of the fact that Mr. Person was not a leader," based on the presentence investigation report that both male victims indicated that co-defendant McKinney did most of the talking during the robbery and appeared to be directing the activities of the three other co-defendants.  (*Id.*, at p. 114).  The court was also cognizant during sentencing that petitioner was nineteen years old at the time, and that petitioner "did not lead the charge, did not direct the charge, but he merely followed and chose and made a conscious decision to associate with these rather – at least one extremely dangerous individual."  (*Id.*, at pp. 114-15).  The court considered that petitioner chose to carry and brandish a weapon, and at the time of his arrest he had a weapon.  (*Id.*, at p. 115).

At the evidentiary hearing, the state district court noted that during his incarceration awaiting trial, petitioner attempted to fabricate an alibi and attempted to influence witnesses.  (Exhibit 52, at p. 115).  The presentence investigation report recounted that after petitioner's arrest and incarceration in the Washoe County Jail, he made several recorded telephone calls in which he (1) instructed his mother, brother, and/or girlfriend to fabricate testimony and motel room receipts to prove that he was in Sacramento at the time of the armed robbery, and (2) instructed the recipient to "call the bitches at the club" (victims Favela and Roberts) and Matherly, and reminded the call recipient to "be tough and mobster up."  (Exhibit 16, at p. 6; Exhibit 52, at p. 115).  The court considered the calls made by petitioner in sentencing him.  (Exhibit 52, at p. 115).  The court also considered that petitioner stated that he was a follower, not a leader.  (Exhibit 52, at pp. 115-16).  The court weighed the potential for rehabilitation and petitioner's crimes involving weapons, as well

as petitioner's commission of escalating violent crimes since age twelve. (*Id.*, at p. 116). The court found, based on the totality of circumstances, that while petitioner was not a leader, his escalating criminal behavior, including the fact that he was on probation at the time of the crime, and his carrying weapons and engaging in a violent armed robbery, led the court to sentence petitioner to consecutive sentences. (*Id.*, at p. 116).

In the written order denying the post-conviction petition and motion to modify sentence, the state district court found that Dr. Nims' report was itself not completely favorable to petitioner, as the report found that petitioner's "decisions would generally be based on his own perceived self-interest, without regard to the needs of others." (Exhibit 59, at p. 6). The court found that Cameron was not ineffective for failing to present additional evidence such as Dr. Nims' report, as "there is no general custom or standard requiring psychological evidence in every case." (*Id.*). The court found that Cameron's performance in preparing for sentencing did not amount to the ineffective assistance of counsel. (*Id.*).

In ruling on petitioner's motion to modify sentence, the state district court reiterated that, at sentencing, the court considered petitioner's relative youth and potential for rehabilitation with the severity of the crime. (Exhibit 59, at p. 7). The court also considered petitioner's history of escalating criminal behavior, his previous unsuccessful rehabilitation efforts, and his unwillingness to comply with the terms of his California probation, which petitioner was serving at the time he committed the crimes. (*Id.*). The court was disturbed by the taped telephone calls made by petitioner while in jail, attempting to coerce prospective witnesses and to fabricate testimony. (*Id.*). "Ultimately, the Court considered the totality of circumstances and sentenced Person to consecutive sentences on Counts IV and V." (*Id.*). The court then opined that, in retrospect, considering the sentences received by petitioner's co-defendants Henderson, Mills, and McKinney, and following McKinney's trial and state post-conviction proceedings, petitioner's sentence reflected poorly on the fairness of the system as a whole and was, in retrospect, unduly harsh. (*Id.*, at pp. 8-9). However, the court found that, based on the reasons set forth for running the sentences consecutively, and the court's limited jurisdiction over a motion to modify sentence, the sentence was not based upon any material mistake of fact, and the court denied the motion. (*Id.*, at p. 9).

24

On appeal from the denial of his state habeas petition, the Nevada Supreme Court ruled as follows:

> First, appellant claims that trial counsel was ineffective for not presenting a personality profile to the sentencing court. Appellant fails to establish deficiency or prejudice. Appellant provides no evidence that an objectively reasonable attorney in trial counsel's place would have presented a personality profile to the court. Appellant's reliance on the sentencing court's suggestion for a psychological evaluation as proof of deficiency is misplaced, as the record shows that the purpose of the request was to assist the department of corrections in classifying appellant. Further, appellant fails to demonstrate a reasonable probability that he would have received a more favorable sentence had the court been provided the psychological evaluation at sentencing. Rather, the district court found that the psychological evidence presented at the evidentiary hearing was not new information and that the sentence was based on appellant's past failure at probation, the violent nature of the crime, appellant's history of escalating crimes, and recorded jailhouse phone calls during which appellant sought to influence witnesses in the case. We therefore conclude that the district court did not err in denying this claim.
>
> Motion to modify sentence
> Appellant urges this court to expand its holding in Passanisi v. State, 108 Nev. 318, 831 P.2d 1371 (1992), to allow a district court to modify a sentence that was based on materially untrue assumptions about a defendant's role in the crime and about his prior criminal history in relation to that of his co-defendants. We decline appellant's invitation. First, appellant fails to demonstrate that the district court relied on materially untrue assumptions about appellant's role in the crime. See State v. District Court, 100 Nev. 90, 102, 677 P.2d 1044, 1052 (1984) ("On appeal, every presumption is in favor of the propriety of the trial court's action in the absence of a showing of error."). Rather, the district court stated that it understood appellant was being directed by one of his co-defendants. Second, the record reflects that appellant was sentenced, as appropriate, based on his own personality history and degree of culpability. See Martinez v. State, 114 Nev. 735, 737, 961 P.2d 143, 145 (1998). We therefore conclude that the district court did not err in denying this claim. See Edwards v. State, 112 Nev. 704, 708, 918 P.2d 321, 324 (1996).

(Exhibit 74, at pp. 2, 5-6) (footnotes omitted).

To summarize counsel's actions, at the initial sentencing, Cameron argued for leniency based on petitioner's youth and the fact that he suffered from ADHD since childhood. Cameron asked the court to consider 24-180 months for each count, with the counts to run concurrently, for a total of 4-30 years. The state district court continued the sentencing and ordered a psychological evaluation of petitioner with the goals of determining whether petitioner comprehended the nature of the crime and his involvement in the crime, due to his reference to ADHD and drug use, and assisting the prison

system for classification purposes. Cameron complied with the state district court's order for a psychological evaluation of petitioner at the time of sentencing. Dr. Hiller determined that petitioner understood that he was charged with serious felonies and that he knew that he was going to prison for a great amount of time. At the continued sentencing, Cameron argued that Dr. Hiller found petitioner to be a nineteen year old, second generation drug user. Dr. Hiller found that petitioner knew that he had committed serious felonies, that he had been in custody for a significant period of time and that he knew that he would be in prison for an even greater period of time. Defense counsel asked that, based on petitioner's age and the psychiatric evaluation of Dr. Hiller, the court sentence him pursuant to the recommendation of 24 months plus 24 months for the weapon enhancement on each count, to run concurrently, so that petitioner would be eligible for parole in four years. The state district court indicated at the evidentiary hearing and in a written order that, at the time of sentencing, it considered the fact that petitioner was a follower, not a leader. Dr. Nims' report would have added nothing to the state court's determination and would not have changed the sentence imposed by the state court.

There is no United States Supreme Court authority that requires counsel to present mitigating psychological evidence at sentencing in a non-capital case. Importantly, defense counsel's performance is to be assessed at the time of the alleged error. *Strickland*, 466 U.S. at 68. Counsel's actions must be evaluated based on his actions at the time of petitioner's sentencing in 2004, not based on the outcome of co-defendants' criminal proceedings held years later. The state district court's opinion that, in retrospect, petitioner received an unduly harsh sentence when compared to his co-defendants, does not demonstrate that counsel was ineffective at the time of sentencing. Petitioner has failed to demonstrate that counsel's actions were unreasonably deficient and that the alleged deficient performance prejudiced the defense. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Federal habeas relief is denied as to Ground III, Part I of the petition.

## 2. Ground III, Part II:  The Henderson letters

Petitioner alleges that the trial court was given impalpable, highly suspect information by the time of sentencing in the form of *ex parte* communications from co-defendant Henderson, and that neither petitioner nor his counsel had any knowledge of the information, yet the prosecutor appeared to reply on the information in advocating the imposition of consecutive sentences.  (ECF No. 36, Amended Petition, at pp. 7, 36-38).  Petitioner further alleges that his counsel, Cameron, was present at a January 29, 2004 status hearing for petitioner, Henderson, and Mills, during which Henderson addressed the court and stated that petitioner and Mills were "trying to take me down with them." (*Id.*, at p. 28).  Henderson claimed complete innocence, contrary to victim identification.  (*Id.*, at pp. 28-29).  Petitioner alleges that Henderson obtained a favorable plea agreement.  (*Id.*, at p. 29). Petitioner infers that when sentencing him, the state district court was influenced by Henderson's *ex parte* communication.  (*Id.*).

### a. Procedural Default

Respondents assert that the claim made at Ground III, Part II of the amended petition was procedurally defaulted in state court.  A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The *Coleman* Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In addressing petitioner's claim regarding co-defendant Henderson's alleged *ex parte* communications, the Nevada Supreme Court ruled as follows:

> Appellant also argues that he was deprived of a fair sentencing hearing because the judge considered impalpable and highly suspect information about appellant contained in a co-defendant's letters to the court.  This claim is outside the scope of claims permissible in a post-conviction petition for writ of habeas corpus challenging a judgment of

conviction based on a guilty plea.  See NRS 34.810(1)(a).
Accordingly, the district court did not err in denying this claim.
[Footnote 5: To the extent appellant argues that the prosecutor also
presented the sentencing court with impalpable and highly suspect
information and that the cumulative impact of this claim and the lack
of a psychological evaluation warrant a new sentencing hearing,
neither argument was raised below, and we therefore decline to
consider them now.  See Davis, 107 Nev. at 606, 817 P.2d at 1173.

(Exhibit 74, at p. 5).  A state procedural bar is "adequate" if it is "firmly established and regularly

followed."  *Beard v. Kindler*, 558 U.S. ___, 130 S.Ct. 612, 618 (2009); *Valerio v. Crawford*, 306

F.3d 742, 776-77 (9th Cir. 2002 (en banc) (state procedural bar is "adequate" if it is "clear,

consistently applied, and well-established at the time of petitioner's purported default").  Further,

Once the state has adequately pled the existence of an independent and
adequate state procedural ground as an affirmative defense, the burden
to place that defense in issue shifts to the petitioner.  The petitioner
may satisfy this burden by asserting specific factual allegations that
demonstrate the inadequacy of the state procedure, including citation
to authority demonstrating inconsistent application of the rule.  Once
having done so, however, the ultimate burden is on the state.

*Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  Petitioner fails to demonstrate that the

procedural bar used by the Nevada Supreme Court is not an adequate state procedural ground.

To overcome a procedural default, a petitioner must establish either (1) "cause for the default

and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result

in a fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

omitted).  Petitioner also must show prejudice to excuse the procedural default.  The prejudice that is

required as part of the showing of cause and prejudice to overcome a procedural default is "actual

harm resulting from the alleged error."  *Vickers v. Stewart*, 144 F.3d 613, 617 (1998); *Magby v.*

*Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

As cause to overcome the state procedural bar, petitioner asserts that the failure of state

officials, specifically, the prosecutor and the state court, to provide trial counsel with the letters in

question prevented him from raising this claim.  If a claim itself is procedurally barred, the basis of

that claim cannot serve as cause to overcome procedural default.  *Edwards v. Carpenter*, 529 U.S.

446, 453 (2000).  Moreover, petitioner has failed to demonstrate that he suffered an actual harm.

Petitioner fails to present any evidence that the state court considered the Henderson letters or any *ex*

28

*parte* communication at the time of petitioner's sentencing, or that the prosecutor based his recommendation for sentencing on the Henderson letters. As such, petitioner has failed to demonstrate that he suffered any prejudice as a result of the procedural default.

### b. Even if Considered, Ground III, Part II Lacks Merit

Even if the claim was not procedurally barred, and this Court reviews the claim on the merits, Ground III, Part II fails because it is conclusory and lacks any evidentiary support. Petitioner alleges that defense counsel, Cameron, never received a copy of the Henderson letters but was present at the pretrial status hearing. Petitioner does not allege how counsel was ineffective. Without factual support, petitioner's claim is conclusory. Rule 2(c), Rules Governing Section 2254 Cases. A mere conclusion of violation of federal rights without specifics fails to state a basis for federal habeas relief. *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995). Petitioner fails to demonstrate that counsel was ineffective when he had no access to the letters and there was nothing at sentencing to indicate that the State or the court relied upon Henderson's outburst at the hearing, undisclosed letters, or other unreliable evidence. Petitioner has not demonstrated that counsel was ineffective or that any prejudice resulted.

Further, petitioner provides no evidence that the court or the prosecution considered or relied upon Henderson's letters or his outburst in sentencing petitioner. At the evidentiary hearing and in a written order, the state district court detailed the factors considered in determining petitioner's sentence. (Exhibit 52; Exhibit 59). Such factors included petitioner's escalating criminal behavior, including the fact that he was on probation at the time of the crime, that petitioner carried weapons, and engaged in a violent armed robbery. (Exhibit 52, at p. 116). Nothing suggests that the state court considered *ex parte* information from Henderson in making its decision regarding petitioner's sentence.

Finally, during the state evidentiary hearing, the court noted that it remembered the case well because Henderson "was very bizarre," was agitated and angry, and claimed he would not take the fall for petitioner and McKinney. (Exhibit 52, at p. 112). The court's reference to Henderson's behavior does not demonstrate that the court considered improper information from Henderson in sentencing petitioner. The reference is clear that the court remembered the case, in part, because of

1   Henderson's behavior.  There is nothing in the record to suggest that Henderson's behavior

2   influenced petitioner's sentence.  Petitioner's claim lacks evidentiary support and is without merit.

3   Therefore, federal habeas relief is denied as to Ground III, Part II of the amended petition.

4   **IV.  Certificate of Appealability**

5      In order to proceed with his appeal, petitioner must receive a certificate of appealability.

6   28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-

7   951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  District

8   courts are required to rule on the certificate of appealability in the order disposing of a proceeding

9   adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for

10   certificate of appealability to be filed.  Rule 11(a) of the Rules Governing Section 2254 and 2255

11   Cases.  Generally, a petitioner must make "a substantial showing of the denial of a constitutional

12   right" to warrant a certificate of appealability.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

13   473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district

14   court's assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at

15   484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the

16   issues are debatable among jurists of reason; that a court could resolve the issues differently; or that

17   the questions are adequate to deserve encouragement to proceed further.  *Id.*  In this case, no

18   reasonable jurist would find this Court's denial of habeas relief debatable or wrong.  The Court

19   therefore denies petitioner a certificate of appealability.

20   **V.  Conclusion**

21      **IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus is

22   **DENIED IN ITS ENTIRETY**.

23      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

24   **APPEALABILITY.**

25   ///

26   ///

27   ///

28   ///

1    **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

2  **ACCORDINGLY.**

3

4    Dated this 23rd day of September, 2013.

5

6                                                                           _____
                                                                           LARRY R. HICKS
7                                                                           UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31